**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **In re:** | : | |
| | : | **Chapter 7** |
| **PURE WEIGHT LOSS, INC.** | : | |
| **f/k/a L.A. Weight Loss Centers, Inc.** | : | |
| | : | |
| **Debtor.** | : | **BANKRUPTCY NO. 08-10315 (JKF)** |
|_____| : | |
| **ARTHUR P. LIEBERSOHN,** | : | |
| **Chapter 7 Trustee for the Estate of** | : | |
| **Pure Weight Loss, Inc.** | : | |
| **f/k/a L.A. Weight Loss Centers, Inc.** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WTAE-TV, a division of** | : | |
| **Hearst-Argyle Television, Inc.** | : | |
| | : | **ADVERSARY NO. 08-195 (SR)** |
| **Defendant.** | : | |
|_____| : | |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

**Introduction**

Before the Court is the motion ("Motion") of the defendant, WTAE-TV, for

summary judgment against the plaintiff, Arthur Liebersohn, who is the Chapter 7

Trustee (the "Trustee") for the estate of the debtor, Pure Weight Loss, Inc. ("Debtor").

The Trustee filed this adversary proceeding pursuant to 11 U.S.C. §547(b) and §550(a)

to avoid and recover two payments which Debtor made to WTAE-TV during the 90 day

preference period (the "Preference Period") before Debtor filed its Chapter 7 bankruptcy

case.  WTAE-TV's Motion asserts that both transfers fall within the "ordinary course of

business" exception of 11 U.S.C. § 547(c)(2)(A).  For the reasons set forth herein,

WTAE-TV's Motion shall be denied.

## Background

### I.  Procedural Background

Debtor filed its bankruptcy case on January 11, 2008 (the "Petition Date").  On

July 30, 2008, the Trustee commenced this adversary proceeding by filing a complaint.[1]

On October 8, 2008, this Court entered a default judgment (the "Default Judgment")

against WTAE-TV for its failure to answer or otherwise respond to the Trustee's

pleading. On December 12, 2008, WTAE-TV filed a motion to vacate the Default

Judgment.  Pursuant to a stipulation by the parties (the "Parties' Stipulation"), the Court

entered an Order vacating the Default Judgment.  Shortly thereafter, WTAE-TV filed its

answer to the complaint and then filed the instant Motion.  The sole issue raised in the

Motion is whether the Payments fit within the "ordinary course of business" exception

under §547(c)(2)(A).[2]

---

[1]  The Trustee subsequently filed an amended complaint in order to properly
name the defendant.  There were no changes made to the claims or any other
substantive part of the original complaint.

[2]  The issue of whether the Trustee has met the requirements for avoidance
under §547(b) is not disputed in the Motion.  The focus of the Motion is on the ordinary
course of business exception contained in §547(c)(2)(A).  Yet, in its memorandum in
support of its Motion, WTAE-TV states generally that "it appears that the Payments
satisfy the elements of a preferential transfer as set forth in 11 U.S.C. §547(b)[.]"  *See
Memorandum of Law in Support of Defendant's Motion for Summary Judgment
("WTAE-TV's Memorandum") at 6.*  In the Trustee's answer to the Motion, he makes the
(continued...)

## II. Payments from Debtor to WTAE-TV

*Before the Preference Period*

Debtor and WTAE-TV began their business relationship in 2004 or approximately

3½ years before Debtor filed for bankruptcy.  WTAE-TV's *Memorandum, Exhibit A ¶ 3*.[3]

WTAE-TV provided Debtor with television advertising services for which it invoiced

Debtor.  *Id. ¶ 4.*  WTAE-TV issued its first invoice to Debtor on July 25, 2004. *Id. ¶3;*

*Trustee's Answer, Exhibit B.*   From that time through the Petition Date, WTAE-TV

invoiced Debtor on a monthly basis, except for three months during which it invoiced

Debtor twice.[4]  *Id.*   WTAE-TV's standard accounting procedure for all of its accounts is

to apply payments received to the oldest outstanding invoice for the respective account

("Standard Accounting Procedure").  *WTAE-TV's Memorandum, Exhibit A ¶ 9.*

According to WTAE-TV, Debtor "paid each monthly invoice in full, between

approximately sixty-four (64) days and one hundred and twenty (120) days after the

invoice date in <u>one payment</u>. " *Id. ¶4 (emphasis added).*  The average time between the

invoice date and payment date (the "Payment Time") prior to the Preference Period was

---

[2](...continued)
assertion that WTAE-TV is prevented from arguing that the Trustee has not established
the requirements for avoidance pursuant to Parties' Stipulation. *See Answer and
Affirmative Defenses of Arthur P. Liebersohn, Plaintiff, to Defendant's Motion for
Summary Judgment ("Trustee's Answer") at ¶ 18.*  The Court has not been asked to
and, therefore, will not address whether the payments at issue satisfy the requirements
for avoidance under §547(b) and/or whether the Parties' Stipulation prevents WTAE-TV
from arguing that the payments are not avoidable under that provision.

[3]  Exhibit A to WTAE-TV's Memorandum is an affidavit by its Controller, Adele
Lawhead.

[4]  Defendant invoiced defendant twice in October 2006, February 2007, and
August 2007.  *Trustee's Answer, Exhibit B.*

72 days.  *Trustee's Answer ¶30.*  For the 38 Pre-Preference Period payments, the

Payment Times ranged from 61 to 120 days (the "Overall Pre-Preference Range").

*Trustee's Answer, Exhibit B.*  For the vast majority of WTAE-TV's invoices, however, the

Payment Time ranged from 64 to 75 days (the "Common Pre-Preference Range").  *Id.*

The Pre-Preference Period Payment Times that were over 90 days were the following:

(I) a payment of $318.75 that was received/applied on January 22, 2007 on an invoice

dated 10/8/2006 (Payment Time of 106 days); and (ii) two payments for $21,016.25 and

$14,768.75 that were received/applied on September 24, 2007 on invoices dated

5/27/07 and 6/24/2007 (Payment Times of 120 and 92 days, respectively).  *Id.*

All Pre-Preference Period payments, except for the one for $318.78 that was

received/applied on January 22, 2007, were over $5,000.  *Id.*  Many of the Pre-

Preference pyments were over $10,0000 and eight of the Pre-Preference payments

were over $15,000.  *Id.*

The following table lists all of the invoices from WTAE-TV to Debtor and the

payments from Debtor to WTAE-TV during the Pre-Preference Period:[5]

---

    [5]  Both parties submitted tables setting forth the invoice dates, the amount
invoiced, the date on which the payment was received/applied and the amount
received.  *See* WTAE-TV's Memorandum, Exhibit A (table of payments) to Exhibit A
(Affidavit of WTAE-TV's controller); Trustee's Answer, Exhibit B (table of payments).  In
addition, the Trustee's table, also lists the Payment Time which is included in the table
set forth above.

| Invoice Date | Amount Invoiced | Payment Received/Applied | Amount Received | Days Until Payment |
|---|---|---|---|---|
| 7/25/04 | $10,625.00 | 9/27/04 | $10,625.00 | 64 |
| 8/29/04 | $13,493.75 | 11/1/04 | $13,493.75 | 64 |
| 9/26/04 | $9,541.25 | 12/6/04 | $9,541.25 | 71 |
| 10/31/04 | $8,712.50 | 1/5/04 | $8,712.50 | 66 |
| 11/28/04 | $6,970.00 | 2/2/05 | $6,970.00 | 66 |
| 12/26/04 | $5,482.50 | 3/3/05 | $5,482.50 | 67 |
| 1/30/05 | $10,710.00 | 4/1/05 | $10,710.00 | 61 |
| 2/27/05 | $8,733.75 | 5/5/05 | $8,733.75 | 67 |
| 3/27/05 | $9,073.75 | 6/6/05 | $9,073.75 | 71 |
| 4/24/05 | $7,650.00 | 7/5/05 | $7,650.00 | 72 |
| 5/26/05 | $9,562.50 | 8/9/05 | $9,562.50 | 75 |
| 6/26/05 | $7,650.00 | 9/6/05 | $7,650.00 | 72 |
| 7/31/05 | $10,348.75 | 10/7/05 | $10,348.75 | 68 |
| 8/28/05 | $8,436.25 | 11/7/05 | $8,436.25 | 71 |
| 9/25/05 | $9,732.50 | 12/7/05 | $9,732.50 | 73 |
| 10/30/05 | $7,522.50 | 1/6/05 | $7,522.50 | 68 |
| 11/27/05 | $6,630.00 | 2/3/06 | $6,630.00 | 68 |
| 12/25/05 | $5,270.00 | 3/6/06 | $5,270.00 | 71 |
| 1/29/06 | $16,978.75 | 4/6/06 | $16,978.75 | 67 |
| 2/26/06 | $14,556.25 | 5/3/06 | $14,556.25 | 66 |
| 3/26/06 | $14,875.00 | 6/5/06 | $14,875.00 | 71 |
| 4/30/06 | $17,743.75 | 7/6/06 | $17,743.75 | 67 |
| 5/28/06 | $13,897.50 | 8/3/06 | $13,897.50 | 67 |
| 6/25/06 | $13,621.25 | 9/5/06 | $13,621.25 | 72 |

| Invoice Date | Amount Invoiced | Payment Received/Applied | Amount Received | Days Until Payment |
|---|---|---|---|---|
| 7/30/06 | $14,110.00 | 10/5/06 | $14,110.00 | 67 |
| 8/27/06 | $13,685.00 | 11/3/06 | $13,685.00 | 68 |
| 9/24/06 | $12,431.25 | 12/4/06 | $12,431.25 | 71 |
| 10/8/06 | $318.75 | 1/22/07 | $318.75 | 106 |
| 10/29/06 | $17,403.75 | 1/8/07 | $17,403.75 | 71 |
| 11/26/06 | $13,153.75 | 2/5/07 | $13,153.75 | 71 |
| 12/31/06 | $14,173.75 | 3/12/07 | $14,173.75 | 71 |
| 1/28/07 | $17,977.50 | 4/5/07 | $17,977.50 | 67 |
| 2/18/07 | $1,275.00 | 5/7/07 | $1,275.00 | 78 |
| 2/25/07 | $16,702.50 | 5/7/07 | $16,702.50 | 71 |
| 3/25/07 | $16,426.25 | 6/7/07 | $16,426.50 | 74 |
| 4/29/07 | $22,737.50 | 7/11/07 | $22,737.50 | 73 |
| 5/27/07 | $21,016.25 | 9/24/07 | $21,016.25 | 120 |
| 6/24/07 | $14,768.75 | 9/24/07 | $14,768.75 | 92 |

*The Preference Period*

The two Preference Period transfers were made on: (1) October 31, 2007 (the "First Transfer"); and (2) December 10, 2007 (the "Second Transfer" and collectively with the First Transfer known as the "Transfers"). *WTAE-TV's Memorandum, Exhibit A (payment table) to Exhibit A.* The First Transfer was for a sum of $21,292.50, which WTAE-TV applied to the invoice, dated July 29, 2007, for that exact amount. *Id.* The Payment Time for the First Transfer was 94 days. *Id.*

The Second Transfer was for a sum of $20,400.00.  *Id.*  This payment was not for the exact amount of any one invoice.  WTAE-TV applied this payment as follows:

(a)     $8,372.50 was applied to pay the full amount of the earliest unpaid invoice, dated August 12, 2007 (Payment Time of 120 days).

(b)     $1,827.50 was applied to partially pay the next unpaid invoice, dated August 26, 2007 (Payment Time of 106 days).  Importantly, the amount of this invoice was $8,372.50.

(c)     $9,690.00 was applied to pay the full balance of an invoice dated December 16, 2007.  The date of this invoice is six days after the payment was made.

(d)     The remainder of the funds ($510) was applied toward the payment of $60,413.75 which WTAE-TV labels as "bad debt."

*WTAE-TV's Memorandum, Exhibit A ¶ 9.*  Importantly, the $60,413.75 of "bad debt" is the amount of the unsecured claim which WTAE-TV filed in Debtor's bankruptcy case. It is the total owed to WTAE-TV's on invoices dated: (i) August, 26, 2007 (for $8,372.50);[6] (ii) September 30, 2007 (for $19,826.25); (iii) October 28, 2007 (for $20,017.50); and (iv) November 18, 2007 (for $14,535.00).  *See Claim #4304.*

**Discussion**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings,

---

[6]  According to WTAE-TV's proof of claim, a balance of $6,035.00 is owed on its invoice, dated August 2007. As noted above, a portion, namely $1,827.50, of the Second Transfer was applied toward payment of this invoice.

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).[7]  A

motion for summary judgment will not be defeated by the mere existence of some

disputed facts, but will be defeated when there is a genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A genuine issue exists

when the "evidence is such that a reasonable [trier of fact] could return a verdict for the

nonmoving party."  *Id.* at 248.

In deciding a motion for summary judgment, it is not the court's role to weigh the

disputed evidence and decide which is more probative or to make credibility

determinations.  *Benchmark Group, Inc. v. Penn Tank Lines, Inc.,* 612 F. Supp.2d 562,

573 (E.D. Pa. April 8, 2009) *(citing Boyle v. County of Allegheny, Pa.,* 139 F.3d 386, 393

(3d Cir.1998) (*citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co. Inc.,* 998 F.2d

1224, 1230 (3d Cir.1993)).  Rather, the court must consider the evidence, and all

reasonable inferences which may be drawn from it, in the light most favorable to the

non-moving party.  *Benchmark Group, Inc.,* 612 F. Supp.2d at 573 (citing *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*citing U.S. v. Diebold,*

*Inc.,* 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361*

*(3d Cir.1987)).*  If a conflict arises between the evidence presented by both sides, the

court must accept as true the allegations of the non-moving party, and "all justifiable

---

[7]  Rule 56 of the Federal Rules of Civil Procedure is applicable hereto pursuant to
Rule 7056 of the Federal Rules of Bankruptcy Procedure.

inferences are to be drawn in his favor." *Benchmark Group, Inc.*, 612 F. Supp.2d at 573
(*citing Anderson,* 477 U.S. at 255).

The moving party bears the initial responsibility of informing the court of the basis
for its motion and identifying those portions of "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any," which it
believes demonstrate the absence of a genuine issue of material fact.  *Celotex*
*Corporation v. Catrett,* 477 U.S. 317, 323 (1986).  If the moving party meets its burden,
then "the nonmoving party must set forth 'specific facts showing that there is a genuine
issue for trial' or the factual record will be taken as presented by the moving party and
judgment will be entered as a matter of law." *Zahavi v. The PNC Financial Services*
*Group, Inc..* 2009 WL 904699, at *6 (W.D. Pa., March 31, 2009*) (quoting Matsushita*
*Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting*
Fed.R.Civ.P. 56(e))).

Section 547(b) of the Bankruptcy Code authorizes the trustee to avoid
preferential transfers made by the debtor.  However, there are exceptions to this
authority. Section 547(c) lists the exceptions.  WTAE-TV contends that the payments at
issue fit within §547(c)(2) which provides, in pertinent part:

> (c)  The trustee may not avoid .... a transfer –
>
> * * *
>
> (2)  to the extent that such transfer was in payment of
> a debt incurred by the debtor in the ordinary course of
> business or financial affairs of the debtor and the transferee,
> and such transfer was –

>           (A)  made in the ordinary course of
> business or financial affairs of the debtor and
> the transferee; or
>
>           (B)  made according to ordinary
> business terms[.]

11 U.S.C. § 547(c)(2).  Prior to the Bankruptcy Abuse and Prevention and Consumer

Protection Act of 2005 ("BAPCPA"), a transfer was required to be conducted *both* in the

ordinary course of business between the debtor and the transferee and according to

ordinary business terms in order for a creditor to successfully challenge an avoidance

by the debtor.[8]  *See* Pub.L. No. 109-8, § 409(1).  After BAPCPA, the transfer may be *either*

in the ordinary course of business between the debtor and the transferee or made

according to ordinary business terms.  *In re Allied Carriers' Exchange, Inc.,* 375 B.R.

610, 615-616 n.3 (10th Cir. BAP 2007).  In WTAE-TV's Motion and supporting

memorandum, it has cited to and discussed cases decided under the old two-part

---

[8]  Prior to BAPCPA, §547(c)(2) provided:

> (c) The trustee may not avoid under this section a transfer—
>
> * * *
>
> (2) to the extent that such transfer was—
>
>      (A) in payment of a debt incurred by the debtor in the
> ordinary course of business or financial affairs of the debtor
> and the transferee;
>
>      (B) made in the ordinary course of business or
> financial affairs of the debtor and the transferee; and
>
>      (C) made according to ordinary business terms[.]

11 U.S.C. §547(c)(2)(2004).

conjunctive rule.  However, it has not submitted any evidence in support of a contention

that the transfers at issue were made according to "ordinary business terms."[9]  *See*

*Fiber Lite Corporation v. Molded Acoustical Products, Inc. (In re Molded Acoustical*

*Products, Inc.)*, 18 F.3d 217, 219-220 (3d Cir. 1994) (opining that a creditor must make

"some showing" of an industry standard or norm to satisfy the "ordinary business terms"

requirement of §547(c)(2)). Accordingly, the Court is treating the Motion as seeking

summary judgment solely pursuant to the "ordinary course of business" exception of

§547(c)(2)(A), which, of course, is permissible in the wake of BAPCPA.

The primary purposes of § 547(c) are "to leave undisturbed normal financial

relations between a debtor and its creditors, even as a company approaches

bankruptcy," and to "protect 'recurring, customary credit transactions that are incurred

and paid in the ordinary course of business of the debtor and the debtor's transferee.'"

*United States Trustee v. First Jersey Securities, Inc. (In re First Jersey Securities, Inc.)*,

180 F.3d 504, 512 (3d Cir. 1999) (*quoting* 5 Collier on Bankruptcy, 547-47).  By doing

this, the ordinary course of business exception under §547(c)(2)(A) is meant to "induce

creditors to continue dealing with a distressed debtor so as to kindle its chances of

survival without a costly detour through, or a humbling ending in, the sticky web of

bankruptcy."  *Molded Acoustical Products, Inc.* 18 F.3d at 219.  Therefore, to determine

ordinary course of business, the court's general inquiry must determine whether

---

[9]  The phrase "according to ordinary business terms" has been interpreted as
referring to the "'*range* of terms that encompasses the practices in which firms similar in
some general way to the creditor in question engage[.]'"  *Molded Acoustical Products,
Inc., 18 F.3d at 224 (quoting In re Tolona Pizza Prods. Corp., 3 F.3d 1029, 1033 (7th
Cir.1993)).*

payments made during the preference period were "in response to a zealous creditor's

attempt to collect on a debt through preferential treatment ahead of other creditors, or

an attempt by the debtor to maintain normal business practices in hope of staving off

bankruptcy."  *Troisio v. E.B. Eddy Forest Products U.S. Trustee (In re Global Tissue*

*L.L.C..)*, 106 Fed. Appx. 99, 102 (3d Cir. 2004).

Whether a transfer was made in the ordinary course of business is a subjective

inquiry "calling for the Court to consider whether the transfer was ordinary between the

debtor and the creditor."  *First Jersey Securities, Inc., 180 F.3d at 512.*  Factors that are

relevant in determining the ordinary course of business between parties for purposes of

§547(c)(2) include the following:

> (1)   the length of time the parties have engaged in the
>        type of dealing at issue;
>
> (2)   whether the subject transfer was in an amount more
>        than usually paid;
>
> (3)   whether the payments were tendered in a manner
>        different from previous payments;
>
> (4)   whether there appears any unusual action by either
>        the debtor or creditor to collect or pay on the debt;
>
> (5)   whether the creditor did anything to gain an
>        advantage (such as gain additional security) in
>        light of the debtor's deteriorating financial
>        condition.

*In re J. Allan Steel Co.,* 336 B.R. 226, 229 (W.D. Pa. 2005) (*citing Troisio v. E.B. Eddy*

*Forst Products, Ltd. (In re Global Tissue, L.L.C.)*, 302 B.R. 808, 812 (D. Del. 2003),

*aff'd*, 106 Fed. Appx. 99 (3d Cir. 2004)).

An important indicator to determine ordinary course of business is whether the timing of preference period payments was consistent with the timing of similar payments during the pre-preference period. *Cunningham v. T & R Demolition, Inc. (In re ML & Associates, Inc.)*, 301 B.R. 195, 204 (Bankr. N.D. Texas 2003). Persuasive authority in this Circuit suggests that courts should look beyond the average payment time during the parties' relationship to determine if the timing of preference period payments were in the ordinary course of business. *Troisio*, 106 Fed. Appx. at 102 ("The Trustee's reliance on average payment time, as is often the case with statistics, does not portray the complete picture of [the creditor's] payment history.").

When there is a difference between pre-preference and preference period payment times, determining whether that difference is substantial enough to be considered outside of the ordinary course of business is a very fact-specific inquiry. *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 891 F.2d 66, 70 (3d Cir. 1989) (reasoning that "[w]hether or not a debtor made a particular payment in the ordinary course of business is a factual determination[.]"). If a preference payment was paid late or behind schedule, that fact alone is insufficient to definitively prove that the payment was outside of the ordinary course of business. *Material Handling Company v. Custom Tool & Mfg. Co. (In re Forklift LP Corp.)*, 340 B.R. 735, 739 (D. Del. 2006).

***The Parties' Arguments***

The dispute is whether the Transfers were made in the ordinary course of

business.  The Trustee contends that the Transfers were executed outside of the

ordinary course of business because there is a 35 day differential in average Payment

Times between the Pre-Preference and Preference Periods.  WTAE-TV asserts, on the

other hand, that the Transfers were within the ordinary course of business because their

Payment Times were within the Overall Pre-Preference Payment Range.

The Trustee also asserts that the Second Transfer was outside of the ordinary

course of business because it was applied inconsistently with WTAE-TV's Standard

Accounting Procedures which was to apply all payments to the earliest outstanding

invoices.  After the full balance of the August 12, 2007 invoice was paid, only $1,827.50

of the remaining $12,027.50 was used to partially pay the next earliest outstanding

invoice, which was dated August 26, 2007.  As noted above, the remaining funds were

applied to: (a) fully pay an invoice dated December 16, 2007, which is six days *after* the

Second Transfer was made; and (b) "bad debt."  Acknowledging that this was a

departure from its Standard Accounting Procedure, WTAE-TV asserts that the Second

Transfer was "erroneously applied" to the December 16, 2007 invoice and the "bad

debt."  It explains that the Second Transfer was not applied according to its Standard

Account Procedure because it had a  "turnover of experienced accounting personnel" at

the time of the Second Transfer and was in a rush to close-out the accounting books for

the month's and year's end.  *WTAE-TV's Memorandum, Exhibit A ¶ 9.*

Finally, the Trustee claims that it is unknown at this time "if there was unusual

collection activity against the Debtor or whether the Debtor did anything to gain an

14

advantage in light of the Debtor's deteriorating financial condition." *Trustee's Answer ¶ 35.* According to WTAE-TV's response to Document Request No. 20 of the Trustee's request for production of documents, documents pertaining to "any effort by the Defendant to collect a debt owing from Debtor" no longer exist. *See Trustee's Answer, Exhibit C (Objections and Responses to Plaintiff's First Request for the Production of Documents Directed to Defendant).* The Trustee, therefore, contends that he should be allowed to examine witnesses at trial to explore whether WTAE-TV engaged in any, for its part, unusual collection activity during the Preference Period. WTAE-TV has offered no evidence on this issue, but instead merely asserts in its memorandum in support of the Motion that the Second Transfer was executed in the ordinary course of business because "there is no indication that [it] did anything to gain advantage in light of the debtor's deteriorating financial condition." WTAE-TV's Memorandum at 11.[10]

WTAE-TV, as the party seeking summary judgment, bears the burden of proving that no reasonable trier of fact could find that the Transfers were *not* made in the ordinary course of business pursuant to Section 547(c)(2)(A). *Anderson*, 477 U.S. at 248 (summary judgment "will not lie if . . . a reasonable jury could return a verdict for the nonmoving party"). For the reasons that follow, the Court concludes that WTAE-TV has failed to meet this burden.

### (i) **The First Transfer**

---

[10] WTAE-TV's counsel also stated at the hearing on the Motion that "there is no evidence that there was any collection activity on the part of WTAE." Transcript, dated August 11, 2009, at 4.

The evidence in the record favors WTAE-TV on the first two factors which courts

consider in determining the ordinary course of business between parties, namely "the

length of time the parties have engaged in the type of dealing at issue" and "whether the

subject transfer was in an amount more than usually paid."  WTAE-TV and Debtor had a

business relationship for a substantial period of time, namely 3 years, prior to the

Transfers.  In addition, the First Transfer was in an amount consistent with the

payments made during the Pre-Preference Period.

However, whether the First Transfer was "tendered in a manner different from

previous payments" is more a problematic question.  The Second Transfer was in the

exact amount of the WTAE-TV's invoice dated July 28, 2007 which is consistent with

the manner in which Debtor tendered its Pre-Preference payments and, therefore, leans

in WTAE-TV's favor. However, the First Transfer's Payment Time of 94 days is 22 days

above the average of the Pre-Preference Payment Times.  Moreover, while the

Payment Time of the First Transfer is in the Overall Pre-Preference Range of 61-120

days, the vast majority of Pre-Preference payments were made in the Common Pre-

Preference Range of 64 to 75 days.  *Plaintiff's Memorandum, Exhibit B.*

Indeed, the *only* Pre-Preference Period Payment Times that were over 90 days

were: (i) the payment from January 22, 2007 (106 days Payment Time); and (ii) the

September 24, 2007 that paid two invoices (120 and 92 days Payment Times).  Both of

these payments are unusual when compared to the other Pre-Preference Period

payments.  The January 22nd payment was only $318.78 whereas every other Pre-

Preference Period payment, except for one, was over $5,000, and the majority of them

were over $10,000.  The September 24th payment was within weeks of the beginning of

16

the Preference Period.  Furthermore, this payment began a series of over-90 day

Payment Times that continued into the Preference Period.

A reasonable trier of fact could infer from this record that the First Transfer's

Payment Time of 94 days is not consistent with the Debtor's payments in the Pre-

Preference Period.  As a consequence, for present purposes, the Court cannot

conclude that the First Payment was made in the ordinary course of business between

the parties, and summary judgment as to this transfer will be denied.

### (ii) The Second Transfer

As to the Second Payment, certain of the evidence in the record clearly indicates

that the Second Payment was not, in fact, made in the ordinary course of the business.

Based on the Debtor's payment history, it never overpaid an invoice or invoices during

the Pre-Preference Period.  *See Plaintiff's Memorandum, Exhibit B.*  Rather, its

payments were always made in the exact amount of an invoice or invoices.  In addition,

Debtor paid each monthly invoice in full in one payment. The Second Payment is

contrary to this payment history.

The Second Transfer exceeded the amount of any outstanding invoices.

Moreover, at the time of the Second Transfer, it appears that the two earliest

outstanding invoices were those dated August 12, 2007 and August 26, 2007 which

totaled $16,745.  *Plaintiff's Memorandum, Exhibit B.*  Since the Second Transfer totaled

$20,400, the difference between the Second Transfer and the total amount owed on the

August 12th and 26th invoices was $3,655.  This amount appears to be an overpayment

of the August invoices because it does not correspond to the amount owed on any of

the subsequent outstanding invoices.  It is also noteworthy that, while WTAE-TV only

applied $1,827.50 of the Second Transfer to the $8,372.50 owed on the August 26th

invoice, it applied $9,690 to fully pay the invoice dated December 16, 2007.  This is

highly peculiar, because Defendant used funds from the Second Transfer to pay an

invoice dated *after* the Second Transfer was received, even though there were unpaid

invoices from September, October, and November at the time of the Second Transfer.

    To address the above mentioned inconsistencies, WTAE-TV has offered evidence

with its Motion to explain the unusual application of the Second Transfer's funds.

According to WTAE-TV, the Second Transfer was oddly applied "because, at the time,

there was turnover of experienced accounting personnel and the payment applications

were rushed to close-out accounting for the month and year end."  WTAE-TV's

Memorandum, Exhibit A ¶ 9.

    The foregoing explanation does not address the Debtor's overpayment of $3,655.

Also, even if one applies the Second Transfer to the earliest outstanding invoices, the

Payment Times of the Second Transfer are 120 and 106 days which, as discussed

above, is well above the average Payment Time of 72 days for the Pre-Preference

payments and outside of the Common Pre-Preference Range of 64 to 75 days.

    The Court draws these observations not for the purpose of weighing the evidence,

but to highlight the fact that there is a genuine conflict in the evidence over a material

fact implicated in connection with the Second Transfer, such as would not permit the

entry of judgment as to that transfer by way of the instant motion.

18

For the reasons set forth above, the Motion shall be denied.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

DATED:    November 10, 2009